## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CBS CORPORATION, SCRIPPS NETWORKS INTERACTIVE, INC., THE WALT DISNEY COMPANY, TIME WARNER INC., TWENTY-FIRST CENTURY FOX, INC., UNIVISION COMMUNICATIONS INC., and VIACOM INC., *Petitioners*, v. FEDERAL COMMUNICATIONS COMMISSION, and UNITED STATES OF AMERICA, *Respondents*. | No. 14-1242 |

### EMERGENCY MOTION FOR STAY PENDING JUDICIAL REVIEW

Mace Rosenstein
C. William Phillips
Andrew Soukup
Laura Flahive Wu
Kevin King
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000

*Attorneys for Petitioners CBS Corporation, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc.*

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rule 18(a)(4), Petitioners certify as follows:

1.     The parties appearing before the Federal Communications Commission ("FCC") are CBS Corporation, Discovery Communications, LLC, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., TV One, LLC, Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc. *See Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and Applications of AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, Order, DA 14-202, at 2 & n.4 (Nov. 10, 2014) (A-1-2).

2.     The petitioners appearing before this Court are CBS Corporation, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc. The respondents in this Court are the FCC and the United States of America. There are no other parties or *amici curiae* at this time.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rules 18(a)(4) and 26.1, Petitioners state as follows:

<u>CBS Corporation.</u>  National Amusements, Inc., a privately held company, directly or indirectly owns a majority of the voting stock of Petitioner CBS Corporation.  No publicly held corporation has a 10% or greater ownership interest in the stock of National Amusements, Inc.  To CBS Corporation's knowledge without inquiry, GAMCO Investors, Inc., on March 15, 2011, filed a Schedule 13D/A with the Securities and Exchange Commission reporting that it and certain affiliates owned, in the aggregate, approximately 10.1% of the voting stock of CBS Corporation.

<u>Scripps Networks Interactive, Inc.</u>  Petitioner Scripps Networks Interactive, Inc. has no parent company, and no publicly-held company has a 10% or greater ownership interest in its stock.

<u>The Walt Disney Company.</u>  Petitioner The Walt Disney Company has no parent company, and no publicly-held company has a 10% or greater ownership interest in its stock.

<u>Time Warner Inc.</u>  Petitioner Time Warner Inc. has no parent company, and no publicly-held company has a 10% or greater ownership interest in its stock.

<u>Twenty-First Century Fox, Inc.</u>  Petitioner Twenty-First Century Fox, Inc. has no parent company, and no publicly-held company has a 10% or greater ownership interest in its stock.

<u>Univision Communications Inc.</u>  Petitioner Univision Communications Inc. is wholly owned by Broadcast Media Partners Holdings, Inc., which is wholly owned by Broadcasting Media Partners, Inc.  No publicly held corporation has a 10% or greater ownership interest in the stock of Broadcasting Media Partners, Inc.

<u>Viacom Inc.</u>  National Amusements, Inc., a privately held company, directly or indirectly owns a majority of the voting stock of Petitioner Viacom Inc.  No publicly-held corporation has a 10% or greater ownership interest in the stock of National Amusements, Inc.  To Viacom Inc.'s knowledge without inquiry, GAMCO Investors, Inc., on November 6, 2009, filed an amendment to a Schedule 13D with the Securities and Exchange Commission reporting that it and certain affiliates owned shares representing 11.3% of the voting stock of Viacom Inc.

Respectfully submitted,

 /s/ Mace Rosenstein
Mace Rosenstein
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000

*Attorney for CBS Corporation, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc.*

November 13, 2014

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES.................................................................. i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF AUTHORITIES ................................................................ vii

GLOSSARY....................................................................................... ix

INTRODUCTION ................................................................................1

BASIS FOR REQUESTING EXPEDITED CONSIDERATION............................2

STATEMENT PURSUANT TO CIRCUIT RULE 18(a) ........................................3

CERTIFICATION PURSUANT TO CIRCUIT RULE 18(a)(2) ............................3

BACKGROUND ...................................................................................3

    A.    Petitioners' Distribution Agreements....................................................3

    B.    The Bureau Invites Comment on Whether To Make VPCI Available To Third Parties. ...................................................4

    C.    The Bureau Permits Third Parties To Access VPCI, Then Accelerates The Effect Of Its Disclosure Decision. ............................5

    D.    The FCC Rubber Stamps The Bureau's Disclosure Decision. ............6

STANDARD OF REVIEW ...................................................................8

ARGUMENT ......................................................................................8

I.    PETITIONERS ARE LIKELY TO PREVAIL ON THE MERITS...............9

    A.    The FCC Gave No Explanation Why It Rejected Petitioners' Intra-Agency Appeal Challenging The November Orders. .................9

    B.    The FCC's Decision To Release Petitioners' VPCI Is Arbitrary And Capricious...........................................................11

    C.    The FCC Arbitrarily And Capriciously Failed To Adopt, Much Less Consider, Reasonable Alternatives. ...........................................15

II.      PETITIONERS WILL SUFFER IRREPARABLE HARM..........................16

III.     OTHER PARTIES WILL NOT BE HARMED BY A STAY......................19

IV.     THE PUBLIC INTEREST FAVORS A STAY. ...........................................20

CONCLUSION .......................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bartholdi Cable Co. v. F.C.C.*,
   114 F.3d 274 (D.C. Cir. 1997) ..............................................................8

*Cmty. Care Found. v. Thompson*,
   318 F.3d 219 (D.C. Cir. 2003) ............................................................10

*Comcast Corp. v. F.C.C.*,
   526 F.3d 763 (D.C. Cir. 2008) ..................................................... 10, 13

*Consumer Fed'n of Am. v. F.C.C.*,
   348 F.3d 1009 (D.C. Cir. 2003) .................................................... 11, 14

*In re Copley Press, Inc.*,
   518 F.3d 1022 (9th Cir. 2008) .............................................................16

*In re Papandreou*,
   139 F.3d 247 (D.C. Cir. 1998) .............................................................16

*Nken v. Holder*,
   556 U.S. 418 (2009) ..............................................................................8

* *Qwest Commc'ns Int'l, Inc. v. F.C.C.*,
   229 F.3d 1172 (D.C. Cir. 2000) .................................... 8, 11, 13, 14, 15

*Republic Airline Inc. v. U.S. Dep't of Trans.*,
   669 F.3d 296 (D.C. Cir. 2012) .............................................................12

*S.E.C. v. Chenery Corp.*,
   318 U.S. 80 (1943) ..............................................................................10

*United States v. Container Corp. of Am.*,
   393 U.S. 333 (1969) ............................................................................13

*United States v. Microsoft Corp.*,
   165 F.3d 952 (D.C. Cir. 1999) ...............................................................8

* Authorities upon which Petitioners principally rely are indicated with an asterisk

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977) ...................................................................8

*Yakima Valley Cablevision, Inc. v. F.C.C.*,
   794 F.2d 737 (D.C. Cir. 1986) ................................................................20

## Statutes

15 U.S.C. § 1 ........................................................................................17

## Regulations

47 C.F.R. § 0.457(d)(1) ..................................................................... 11, 12

47 C.F.R. § 0.457(d)(1)(iv) ..................................................................11

## Other administrative materials

* *Current Policy Re: Treatment of Confidential Info.*,
   13 FCC Rcd. 24816 (1998) ............................................. 4, 13, 15, 16

* *Current Policy Re: Treatment of Confidential Info.*,
   14 FCC Rcd. 20128 (1999) ............................................. 9, 19

*In re Adelphia Commc'ns Corp.*,
   20 FCC Rcd. 20073 (2005) ..................................................................9

*In re AT&T*,
   26 FCC Rcd. 8801 (2011) ....................................................................9

*In re Comcast*,
   25 FCC Rcd. 2140 (2010) ....................................................................9

* *In re Comcast Corp.*,
   17 FCC Rcd. 22633 (2002) .......................................... 11, 14, 16

*In re Cricket License*,
   28 FCC Rcd. 11803 (2013) ..................................................................9

*In re Telcordia Techs.*,
   29 FCC Rcd. 7592 (2014) ....................................................................9

## **GLOSSARY**

Bureau    -    Media Bureau of the Federal Communications Commission

FCC    -    Federal Communication Commission

VPCI    -    Video Programming Confidential Information

## INTRODUCTION

This emergency motion seeks to stay a decision of the Federal Communications Commission ("FCC") ordering the release of certain highly confidential information on **November 17, 2014**.  The release of this information violates the Trade Secrets Act and the Administrative Procedure Act, and will cause substantial, irreparable harm to Petitioners and the highly competitive programming marketplace in which they operate.

This case involves the FCC's unprecedented and well-publicized decision— narrowly approved on a 3-2 vote—to provide third-party access to "hundreds of thousands of pages" of highly confidential programming distribution agreement materials (including negotiating strategy documents) between Petitioners and cable and satellite system operators.  There is no dispute that these materials contain highly sensitive information that, if disclosed, will cause substantial competitive and public interest harms.  The FCC historically has afforded the highest level of confidentiality protection to these materials.

The decision on appeal—the product of what one FCC Commissioner called "procedural shenanigans"—marks an abrupt and unexplained departure from this practice.  The procedural record below reflects an agency that disregarded past practice, precedent, and the rights of entities like Petitioners, who "are not parties to the [mergers] and [whose] rights cannot and should not be trampled over."  A-5.

–1–

Rather than make the "persuasive showing" that the law requires, the FCC did not even articulate its own basis for its decision.

Instead, in response to filings in this Court, the FCC issued a cursory seven-paragraph order adopting the reasoning of a prior decision of the FCC's staff to support a hasty and irregular denial of two intra-agency appeals (one of which the staff decision did not—and could not—address because it was filed *after* the staff's decision).  The FCC did so even though "the argument for protecting programming contracts is *more* compelling here, not less," A-4, and even though requests to access these materials "appear to be more of a fishing expedition by interests groups and competitors to obtain market-sensitive information."  A-5.

This Court repeatedly has recognized the care that must be taken in deciding questions regarding the disclosure of extremely sensitive confidential information, and the careful balance that must be struck to protect confidentiality.  The FCC did not do so here, instead issuing a decision that—in the words of one FCC Commissioner—"could clearly result in irreparable harm and I hope that some court will recognize this."   A-5.  The Court should issue a stay to allow careful review of what the FCC has rushed through its gates.

## BASIS FOR REQUESTING EXPEDITED CONSIDERATION

In the context of the FCC's review of two corporate transactions involving five of the nation's largest video distributors, the FCC issued an order on

–2–

November 10, 2014, that it will release hundreds of thousands of pages of highly

sensitive and confidential distribution agreements and related negotiation materials

between Petitioners and the merger parties to third parties on **November 17, 2014

at 3:00 p.m.**[1]  Absent a stay, Petitioners will suffer irreparable harm, and thus

request expedited consideration of this motion pursuant to Circuit Rule 27(f).

Petitioners ask that their motion be resolved by **November 17, 2014**.

## STATEMENT PURSUANT TO CIRCUIT RULE 18(a)

Petitioners filed applications for review and emergency requests for stay

with the FCC on October 14 and November 7, which the FCC denied.  *See* A-1.

## CERTIFICATION PURSUANT TO CIRCUIT RULE 18(a)(2)

Petitioners' counsel certifies that, prior to filing this motion, he called FCC

counsel of record and left messages outlining the substance of this motion.

## BACKGROUND

**A.     Petitioners' Distribution Agreements.**

Petitioners are national broadcast and cable companies that create, produce,

and license video programming for public exhibition to the public.  To deliver their

programming, Petitioners negotiate agreements with distributors, which agree to

---

[1]     Pursuant to Circuit Rule 27(f), this motion is filed fewer than seven days be-
fore the date when judicial action is necessary because the FCC's unlawful order,
issued at 8 p.m. on November 10, 2014, will take effect at 3 p.m. on November 17,
2014.  Notice of this 3 p.m. deadline appeared only in a statement by an unidenti-
fied "FCC spokesperson" quoted in the trade press.

make programming available to consumers through cable, satellite, and other sys-

tems.  These agreements are referred to as "Distribution Agreements," and they

"contain highly sensitive information that is central to [Petitioners'] business strat-

egies, including, among other things, pricing and business terms."  A-81.

The FCC has long recognized that Distribution Agreements are entitled to

the highest level of confidential treatment because disclosure of these materials

"can result in substantial competitive harm to the information provider."  *Current*

*Policy Re: Treatment of Confidential Info.*, 13 FCC Rcd. 24816, 24852 (1998).

Petitioners ensure the highest possible level of confidentiality for their Distribution

Agreements, which contain stringent, bargained-for confidentiality provisions to

prevent disclosure by the contract parties to third parties and even to some of their

own employees.  A-112-13, -117-18, -122-23, -126-27, -130-31, -134-35.

## B.    The Bureau Invites Comment on Whether To Make VPCI Available To Third Parties.

This dispute arises in the context of the FCC's ongoing review of two pro-

posed mergers involving five of the nation's largest video distributors.  As part of

its review, the FCC's Media Bureau ("Bureau") directed the merger parties to pro-

duce the parties' Distribution Agreements with Petitioners (and related negotiation

materials), which "have historically been treated as especially sensitive from a

competitive standpoint and involve highly confidential information."  A-81.

In response to concerns raised by programmers and broadcasters that the

disclosure of these sensitive materials would cause irreparable harm, the FCC sought public comment. *Id.* Twenty-six parties, filing jointly or individually, opposed disclosure to third parties. *See id.* These commenters urged the FCC to adopt the approach it has used in prior mergers and review materials provided to the Department of Justice in connection with that agency's parallel review of the mergers. *Id.* If adopted, this approach would avoid making Distribution Agreements and negotiation materials available to third parties.

Just three commenters supported third-party access to raw, unredacted Distribution Agreements and related negotiation materials. A-81-82. Each of these commenters purchases (or represents purchasers) of Petitioners' programming, and will benefit from access to information about competitors' pricing and other terms. *See* A-112-14, -117-19, -122-23, -126-27, -130-31, -134-36.

## C. The Bureau Permits Third Parties To Access VPCI, Then Accelerates The Effect Of Its Disclosure Decision.

On October 7, 2014, the Bureau issued three orders that collectively permitted third parties to access a subset of "Highly Confidential Information" that the FCC refers to as "Video Programming Confidential Information," or "VPCI." A-80-109. Because of the heightened sensitivity of this information, the orders ensured that Petitioners would have the right to object to any individual's request to access VPCI. A-92, ¶ 8. Consistent with FCC and this Court's precedent, the orders appropriately provided that any objection would have had the effect of pre-

venting any individual from accessing VPCI until the objection could be reviewed by the five FCC Commissioners (the "Commission") and a court. *Id.* One week later, Petitioners filed an intra-agency appeal asking the Commission to review the legality of the Bureau's underlying disclosure decision, and exercised their right under the orders to object to any individual's request to access Petitioners' VPCI in the merger proceedings. *See* A-1.

Then, in apparent recognition that its October orders were flawed, on November 4, 2014 the Bureau engaged "in a highly irregular maneuver," A-3, of *sua sponte* issuing four additional orders, on its own *ex parte* motion, that *accelerated* third-party access to VPCI while Petitioners' appeal was pending. A-28-79. These orders denied nearly all of Petitioners' objections and modified the October 7 orders in a manner calculated "to take away Petitioners' due process rights." *See* A-3. The protective orders modified the October 7 orders to permit any requesting individual to access VPCI five business days after the Bureau rejects an objection to that individual. A-45, ¶ 36; A-10 & A-21, ¶ 8. Because the Bureau's November 4 orders would result in release of VPCI for third party inspection starting on November 13, 2014, on November 7, 2014, Petitioners filed an intra-agency appeal and emergency stay request seeking Commission review of those orders. A-1.

### D.    The FCC Rubber Stamps The Bureau's Disclosure Decision.

The Commission, which had ignored Petitioners' two intra-agency appeals,

was spurred into action when Petitioners sought emergency relief in this Court on November 10.  In a "cursory, two-page order" that one Commissioner complained had been before the Commission "for no more than a few hours," A-3, the Commission rubber-stamped the Bureau's disclosure decision by a 3-2 vote.  A-1. The Commission denied Petitioner's challenges to the Media Bureau's October 7 orders and its November 4 orders solely "for the reasons stated by the Media Bureau in its November 4, 2014, Order on Reconsideration."  A-1.  The Commission did not state any independent basis for its decision.  The immediate effect of the FCC's decision is to grant 244 individuals access to "hundreds of thousands of pages" of VPCI under the protective orders starting at 3:00 p.m. on November 17, 2014.  A-2, ¶ 7; A-44, ¶ 34.

The Commission's decision was sharply criticized by two Commissioners. *See* A-3-5.  Stating that Petitioners had "raised serious arguments that merit the commission's thoughtful consideration," Commissioner Pai noted that the FCC "has processed transaction after transaction in the video market … *without* supply-ing the contracts to any and all signatories of the protective orders," and that "the argument for protecting programming contracts is *more* compelling here, not less." A-3-4.  Commissioner O'Rielly found it "inexplicabl[e]" that the Commission would provide access before the affected parties can "exercise their rights to pro-tect" such information, contrary to the FCC's "longstanding presumption that sen-

–7–

sitive documents would not be disclosed until any challenges were reviewed by the Commission and, if appropriate, a court of competent jurisdiction." A-5.

## STANDARD OF REVIEW

A stay pending review of an agency order is warranted where (1) the petitioners are likely to prevail on the merits; (2) the petitioners are likely to suffer irreparable harm absent a stay; (3) other interested parties will not be substantially injured if a stay is granted; and (4) the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009); *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) ("The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors.").

## ARGUMENT

This Court routinely has granted stays to protect confidential information from disclosure while a challenge is adjudicated. *See*, *e.g.*, *Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 229 F.3d 1172, 1176 n.12 (D.C. Cir. 2000) (granting stay in case challenging FCC's disclosure decision). The harm from disclosure is so substantial and irreparable that this Court has stayed orders disclosing confidential information even when the Court ultimately upheld the disclosure decision. *See*, *e.g.*, *United States v. Microsoft Corp.*, 165 F.3d 952, 954 (D.C. Cir. 1999); *Bartholdi Cable Co. v. F.C.C.*, 114 F.3d 274, 279 (D.C. Cir. 1997). There is no

reason to depart from that practice here.

## I.     PETITIONERS ARE LIKELY TO PREVAIL ON THE MERITS.

### A.     The FCC Gave No Explanation Why It Rejected Petitioners' Intra-Agency Appeal Challenging The November Orders.

The arbitrary and capricious nature of the FCC's disclosure decision is first evidenced by its failure to explain its departure from its historical practice of prohibiting access while a challenge to a disclosure decision is pending.  The October protective orders, while deficient in other respects, were at least consistent with the FCC and this Court's precedent prohibiting disclosure while a challenge is pending and were consistent with the orders the Bureau cited (at A-36-37, ¶¶ 18-19) as an example of the FCC's "long-established procedures."[2]  The FCC adopted this approach because "disclosure pending review would effectively moot any applications for review because it would [disclose] the assertedly confidential information … without first granting the objecting party the opportunity to seek Commission or judicial review of the disclosure decision."  *Current Policy re: Treatment of Confidential Info.*, 14 FCC Rcd. 20128, 20130 (1999).  The FCC abruptly, *sua sponte*, and without explanation, removed these protections.  *See* A-1-2; A-45, ¶ 36.

---

[2]     *E.g.*, *In re Telcordia Techs.*, 29 FCC Rcd. 7592, ¶ 10 (2014) (barring disclosure "[u]ntil any objection is resolved by the Commission and, if appropriate, any court of competent jurisdiction"); *In re Cricket License*, 28 FCC Rcd. 11803, 11806 (2013) (same); *In re AT&T*, 26 FCC Rcd. 8801, 8803 (2011) (same); *In re Comcast*, 25 FCC Rcd. 2140, 2145 (2010) (same); *In re Adelphia Commc'ns Corp.*, 20 FCC Rcd. 20073, 20080 (2005) (same).

–9–

The FCC's "unexplained departure from precedent must be overturned as arbitrary and capricious." *Comcast Corp. v. F.C.C.*, 526 F.3d 763, 769 (D.C. Cir. 2008). In "a highly irregular maneuver," A-3, the Commission upheld the Bureau's October 7 and November 4 orders "for the reasons stated by the … Bureau in its November 4, 2014 Order on Reconsideration," even though the Bureau itself gave no reason for its departure from FCC precedent. A-1. Indeed, by definition, the Bureau could not have considered in a *November 4* decision Petitioners' arguments made in their *November 7* intra-agency appeal of that decision. By rejecting Petitioners' arguments without articulating any rationale, the Commission failed to justify its exercise of agency discretion, as required by the *Chenery* doctrine. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943).

As Commissioners Pai and O'Rielly recognize, this "inexplicabl[e]" departure from the FCC's historical practice makes it impossible for any party that has objected to a request to access VPCI—even an objection based on the fact that the requestor is engaged in competitive decision-making—to seek meaningful Commission or judicial review prior to disclosure. A-5. "There is no authority for the proposition that a lower component of a government agency may bind the decision making of the highest level," as the FCC's revised approach to handling objections will do. *Cmty. Care Found. v. Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003).

–10–

**B.      The FCC's Decision To Release Petitioners' VPCI Is Arbitrary And Capricious.**

The FCC's rushed decision to give third parties access to Petitioners' VPCI further evidences the arbitrary and capricious nature of its decision.  Congress enacted the Trade Secrets Act to prohibit a government agency from ordering the "unauthorized release of trade secrets and commercial information."  *Qwest*, 229 F.3d at 1177-78.  There is no dispute that Petitioners' VPCI is covered by the Trade Secrets Act and may be disclosed only if a "persuasive showing" has been made why that material must be made available to third parties.  47 C.F.R. § 0.457(d)(1), (d)(1)(iv).

In light of this high bar, in prior merger reviews, the FCC has generally declined to make Distribution Agreements and related negotiation materials available.  Instead, the FCC has reviewed VPCI either *in camera* or at the Department of Justice in connection with that agency's parallel review of these merger proceedings, an approach that enables the FCC to avoid placing VPCI in the record of its merger proceedings.  The FCC followed this approach in 2010 in its review of the Comcast/NBC Universal combination, a merger that raises issues similar to those here.  *See* A-3-5, -119-20, -127-28, -136.  This Court has long sanctioned the FCC's practice of declining to place highly confidential materials in the public record.  *See Consumer Fed'n of Am. v. F.C.C.*, 348 F.3d 1009, 1012-14 (D.C. Cir. 2003), *aff'g In re Comcast Corp.*, 17 FCC Rcd. 22633, 22636 (2002).

–11–

The FCC's "cursory, two-page order"—which was before the Commission "for no more than a few hours"—fails to make the "persuasive showing" required by Section 0.457(d) why "hundreds of thousands of pages" of VPCI should be made available to third parties here.  A-3.

*First*, the extent of the disclosure is unprecedented.  The FCC has no explanation for why Distribution Agreements and materials reflecting negotiating strategies must be made available now, when it has not required disclosure of this information in prior major media mergers.  *See*, *e.g.*, *Republic Airline Inc. v. U.S. Dep't of Trans.*, 669 F.3d 296, 299-300 (D.C. Cir. 2012) ("One of the core tenets of reasoned decision-making is that an agency [when] changing its course … is obligated to supply a reasoned analysis for the change.").

Rather than defend its break from precedent, the FCC remarkably insists its decision is consistent with precedent.  *See* A-36-37, ¶ 18-19.  To be sure, the Bureau identified two other merger proceedings in which it made Distribution Agreements available to third parties.  *Id.*  The universe of Distribution Agreements made available there was substantially smaller than the "hundreds of thousands of pages of contract programming materials" the FCC proposes to place in the administrative record.  A-44.  And the FCC does not dispute that VPCI-related negotiation materials have *never* been made accessible to third parties in prior merger proceedings, even under a protective order.  The absence of a

–12–

reasoned explanation why VPCI must now be made available requires that the FCC's decision be set aside. *See*, *e.g.*, *Qwest*, 229 F.3d at 1183-84 (reversing FCC disclosure decision for similar reasons).

*Second*, the FCC failed to explain why disclosure of Petitioners' VPCI serves a "compelling public interest," *Current Policy*, 13 FCC Rcd. at 24823-24, rather than the private interest of Petitioners' competitors and distributors. Only five entities identified in the Bureau's November 4 order have requested access to VPCI. Three are distributors that carry Petitioners' programming; a fourth is a trade association that represents other such distributors.[3] As Commissioner O'Rielly observed, these requests "appear[] to be more of a fishing expedition by interests groups and competitors to obtain market-sensitive information." A-5.

The antitrust laws prohibit parties from sharing pricing information. *See United States v. Container Corp. of Am.*, 393 U.S. 333, 337-38 (1969) (holding exchange of price information violated the Sherman Act). As this Court has held, it can be arbitrary and capricious to require such sensitive information to be dis-

---

[3]   Although DISH Network now asks for access to Petitioners' VPCI, when its own Distribution Agreements were at issue in a prior merger proceeding, DISH urged the FCC to keep these Agreements out of the public record—as Petitioners ask here—because "inadvertent or intentional" disclosure "would have a devastating effect on [DISH's] business and place the companies at a significant competitive disadvantage." A-157. Unlike here, the FCC apparently agreed to do so. *Comcast*, 526 F.3d at 769 ("An agency must provide an adequate explanation to justify treating similarly situated parties differently.").

–13–

closed. *See Qwest*, 229 F.3d at 1180-84 (FCC acted arbitrarily and capriciously by ordering release of party's confidential information to its competitors).

*Third*, the FCC failed to explain why it is making highly sensitive information available to third parties when it does not even know whether that information is relevant. In prior merger proceedings, the FCC has observed that it has the "obligation" to make "antecedent determinations regarding which documents or evidence will be most probative and relevant to our decision-making." *Comcast*, 17 FCC Rcd. at 22635. As part of this "obligation," the FCC has noted that coordinating its public review with the Department of Justice's confidential review enables the FCC to "focus its inquiry on the public interest issues that are truly relevant to a proposed transaction." *Id.* at 22650. This Court has approved of this approach. *See Consumer Fed'n of Am.*, 348 F.3d at 1012-14.

In the case of Petitioners' VPCI, the FCC has abdicated this "obligation."[4] The FCC admits that it is prepared to make VPCI available even though the significance of that VPCI is "not apparent to the Commission"—a statement at odds with the FCC's observation that it will not disclose confidential information

---

[4]     In fact, when another participant—Hilton Worldwide—asserted similar categorical objections intended to prevent any third party from accessing its highly confidential information, *see* A-161-69, the Bureau *sustained* Hilton's categorical objection and concluded that it could complete its review of the merger proceedings *without* placing Hilton's highly confidential information in the public record, *see* A-170. The FCC offers no explanation why Hilton's categorical objection was sustained but Petitioners' identical objection was rejected.

"on the mere chance that it might be helpful." *Current Policy*, 13 FCC Rcd. at 24823. The FCC also states that an initial relevancy determination would "entail[] delay and diversion of resources to no productive end," A-36, ¶ 16, suggesting that the FCC does not plan to review the VPCI it will make available. The FCC has it backwards—it cannot make the "persuasive showing" required by the Trade Secrets Act that "hundreds of thousands of pages of contract programming materials" must be made accessible unless it has reviewed and concluded that these materials are relevant to its review of the proposed mergers.

### C.    The FCC Arbitrarily And Capriciously Failed To Adopt, Much Less Consider, Reasonable Alternatives.

Even if the FCC had provided a "persuasive showing" why disclosure is necessary—it has not—its decision should be set aside because it failed to explain why it rejected alternatives to protect Petitioners' confidentiality interests. *Qwest*, 229 F.3d at 1183 (FCC cannot release highly confidential data in raw form when it has not "consider[ed] plausible alternatives and discount[ed] them").

*First*, the FCC failed to explain adequately why it declined to adopt Petitioners' alternative proposal to release relevant VPCI in anonymized or redacted form. The FCC complains that it would be too burdensome to adopt this approach, *see* A-44-45, ¶ 34, but any burden is one of the FCC's own making because of its sweeping information requests. The FCC cannot now complain that it is too difficult to protect the confidentiality of Petitioners' VPCI when it could reduce any burden

associated with anonymizing VPCI simply by scaling back its information re-quests—an approach in line with the FCC's self-acknowledged "obligation not to overreach in [its] discovery requests when confidential third party agreements are at issue." *In re Comcast*, 17 FCC Rcd. at 22639.

*Second*, the FCC failed to explain why every individual who requests access to Highly Confidential Information should also be entitled to access VPCI. The protective orders recognize that VPCI is a special category of Highly Confidential Information for which heightened restrictions are necessary. But the orders fail to take the next step of restricting the universe of *individuals* who can access VPCI. The FCC's failure to limit access to VPCI to individuals who demonstrate a partic-ularized need to view VPCI is arbitrary and capricious.

## II.     PETITIONERS WILL SUFFER IRREPARABLE HARM.

As this Court repeatedly has recognized, appellate review *after* disclosure is "obviously not adequate" to protect confidentiality interests because, by the time of the appeal, "the cat is out of the bag." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998); *see also In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Once information is published, it cannot be made secret again."); A-3-4.

The harm from disclosure is acute here. The FCC has long acknowledged that third-party access to Petitioners' VPCI "can result in substantial competitive harm" to Petitioners. *Current Policy*, 13 FCC Rcd. at 24852. The Bureau similar-

ly observed that Petitioners' VPCI "contain highly sensitive information that is central to [Petitioners'] business strategies, including, among other things, pricing and business terms." A-86.

The FCC's disclosure decision nevertheless gives 244 individuals access to Petitioners' Distribution Agreements and negotiation strategies with the country's largest programming distributors. As the attached declarations demonstrate, a distributor that knows the terms of Petitioners' Distribution Agreements will be given by the FCC an unfair advantage in negotiating its own distribution agreement with that Petitioner will have no incentive to negotiate or arbitrate reasonable rates or other terms and conditions with the Petitioner.[5] A-113-14; A-118-19; A-123; A-127; A-131; A-135-36. The antitrust laws prohibit competitors from sharing these contract terms precisely because access to such information can facilitate agreements that unfairly restrain trade and competition. *See* 15 U.S.C. § 1.

These harms are not merely theoretical. One large distributor has expressly asked for access to Petitioners' VPCI, citing an alleged need to "view and analyze" Petitioners' Distribution Agreements. *See* A-82. Agents of a trade organization

---

[5]     It makes no difference that the merger parties have requested access to each other's VPCI with Petitioners. Petitioners' VPCI is subject to strict restrictions on access; in fact, under the confidentiality terms of many Distribution Agreements, most (if not all) of the employees of a third-party purchaser of one of the parties to a Distribution Agreement are prohibited from knowing the terms of that Agreement until after the purchase closes—and there is no guarantee that these mergers will be consummated. *See* A-156.

that represents small- and medium-size distributors also have asked to review pricing information. *Id.* Several Petitioners currently are negotiating contracts with these distributors, each of whom would benefit commercially from access to the agreements of their competitors. A-119; A-131; A-135.

The FCC staff itself has recognized the potential harm here:

> Access to [Petitioners'] contracts could allow someone to obtain a detailed, industry-wide overview of the current and future programming market. Indeed, because the AT&T and Comcast transactions are pending simultaneously, the ability to capture an understanding of the programming marketplace is greater, and potentially more troublesome, than if only one were before us.

A-138. For this reason, Commissioner Pai warned that "the argument for protecting programming contracts is *more* compelling here, not less." A-4. And three of the parties to the proposed mergers expressly supported the Department of Justice review procedures the Petitioners proposed using here. *See* A-141-44.

The FCC suggests that the protective orders are sufficient to prevent irreparable harm from occurring, but Petitioners strongly contend otherwise and have asked this Court to review the validity of those orders. "No matter how safe or protected this information may seem, you can never promise with any level of certainty that the information won't get out in some form. . . . This bell cannot be unrung." A-5. The FCC cannot circumvent this Court's review by unilaterally deciding that Petitioners' views lack merit and issuing orders that accelerate the very

–18–

harm Petitioners will suffer by foreclosing Petitioners' due process rights.  As Commissioner O'Rielly observed, the FCC's disclosure decision "could clearly result in irreparable harm and I hope that some court will recognize this." *Id.*

## III.    OTHER PARTIES WILL NOT BE HARMED BY A STAY.

Staying the FCC's disclosure decision while this Court considers this appeal would not harm any interested party.  Each merger party already has agreed that the terms of their Distribution Agreements with Petitioners should be kept confidential.  They cannot complain that their interests will be harmed if the result of a stay is consistent with their underlying contractual obligations.

Nor will a stay delay the Commission's review of the proposed transactions. Petitioners have not sought to suspend any aspect of the merger proceedings and FCC review can continue unimpeded:  the *FCC* has access to *all* of the materials at issue, and Petitioners have not sought to block FCC access to VPCI.  Instead, Petitioners seek only to preserve the confidentiality of their propriety business information while they pursue their right to effective review of the FCC's disclosure decision, a  request in line with the FCC's historical recognition that confidentiality interests take priority even if "disclosure may be delayed pending the appeals process." *Current Policy*, 14 FCC Rcd. at 20129.[6]

---

[6]     The FCC cannot claim that Petitioners' objections impede third-party access to other confidential information besides VPCI when Petitioners never sought to do (continued…)

## IV.   THE PUBLIC INTEREST FAVORS A STAY.

The Trade Secrets Act reflects a public policy against the unauthorized disclosure of highly confidential information.  In addition, the public interest strongly favors maintaining a competitive marketplace, an interest that would be immediately and irreparably undermined by disclosure of Distribution Agreements. As Commissioner O'Rielly observed, Petitioners "are not parties to these [mergers] and their rights cannot and should not be trampled over."  A-5.  For these reasons, the public interest could not be harmed by maintaining the *status quo* and continuing to keep Distribution Agreements out of the hands of third parties.

## CONCLUSION

The Court should issue an order staying the effectiveness of the FCC's decision to disclose Petitioners' VPCI while a challenge to the legality of that disclosure is adjudicated.

---

so.  Any individual who seeks access to Highly Confidential Information has the right to access VPCI.  A-6-27.  Even though Petitioners repeatedly told the FCC that, given the option, they would object only to individuals who seek access to VPCI and urged the FCC to adopt an approach that would permit them to do so, A-141-52, the FCC declined to do so.  "The failure of an agency to consider obvious alternatives has led uniformly to reversal."  *Yakima Valley Cablevision, Inc. v. F.C.C.*, 794 F.2d 737, 746 n.36 (D.C. Cir. 1986).

DATED:      November 13, 2014

Respectfully submitted,

 /s/  Mace Rosenstein
Mace Rosenstein
C. William Phillips
Andrew Soukup
Laura Flahive Wu
Kevin King
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004-2401
(202) 662-6000

*Attorneys for Petitioners CBS Corporation, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of November 2014, copies of the fore-going Emergency Motion For Stay Pending Judicial Review were served on the following parties by the manner indicated:

*By Hand Delivery and Electronic Mail:*      *By First Class Mail:*

Federal Communications Commission
Jonathan Sallet                                              Eric H. Holder, Jr.
General Counsel                                            Attorney General
Federal Communications Commission      United States Department of Justice
445 12th Street, S.W.                                   950 Pennsylvania Avenue, N.W.
Washington, DC 20554                              Washington, D.C. 20530
Jonathan.Sallett@fcc.gov


 */s/    Mace Rosenstein*
Mace Rosenstein

*Attorneys for Petitioners CBS Corporation, Scripps Networks Interactive, Inc., The Walt Disney Company, Time Warner Inc., Twenty-First Century Fox, Inc., Univision Communications Inc., and Viacom Inc.*