ORAL ARGUMENT SCHEDULED FOR FEBRUARY 20, 2015

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————

Case No. 14-1242

————————————

CBS CORPORATION, SCRIPPS NETWORKS INTERACTIVE, INC.,
THE WALT DISNEY COMPANY, TIME WARNER INC., TWENTY-FIRST
CENTURY FOX, INC., UNIVISION COMMUNICATIONS INC.,
and VIACOM INC.,

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents.*

————————————

On Petition for Review of an Order of the Federal Communications Commission

————————————

**BRIEF OF INTERVENORS AT&T INC., CHARTER
COMMUNICATIONS, INC., COMCAST CORPORATION, TIME
WARNER CABLE INC., AND DIRECTV**

————————————

William M. Wiltshire
Timothy J. Simeone
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, NW, 8th Floor
Washington, D.C. 20036-3537
(202) 730-1350


*Counsel for DIRECTV*

Michael K. Kellogg
Scott H. Angstreich
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900


*Counsel for AT&T Inc.*

*(additional counsel listed on inside cover)*

January 2, 2015

Larry D. Hunter
DIRECTV, LLC
2260 East Imperial Highway
El Segundo, CA 90245
(310) 964-5000

*Counsel for DIRECTV*

D. Wayne Watts
David R. McAtee II
AT&T INC.
208 South Akard Street, Room 3303
Dallas, TX 75202
(214) 757-3319

Lori Fink
Gary Phillips
AT&T INC.
1120 20th Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 457-3055

*Counsel for AT&T Inc.*

Samuel L. Feder
John Flynn
JENNER & BLOCK
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 639-6000

*Counsel for Charter
Communications, Inc.*

David P. Murray
Francis M. Buono
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000

*Counsel for Comcast Corporation*

Matthew A. Brill
Matthew T. Murchison
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004
(202) 637-2200

*Counsel for Time Warner Cable Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Intervenors AT&T Inc., Charter Communications, Inc., Comcast Corporation, Time Warner Cable Inc., and DIRECTV ("Intervenors") certify as follows:

**A.      Parties and Amici**

All parties, intervenors, and amici appearing in this Court are listed in the Brief for Petitioners CBS Corporation, et al.

**B.      Ruling Under Review**

The order under review is the FCC's Order, FCC 14-202, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations,* Media Bureau Docket Nos. 14-57 & 14-90 (Nov. 10, 2014) ("November 10 Commission Order") (JA1-5).

**C.      Related Cases**

Intervenors are not aware of any related cases pending before this Court or any other Court.  Some of the issues presented in this case were the subject of an earlier petition for review and a related petition for a writ of mandamus, both filed in this Court on November 10, 2014.  *See In re CBS Corp.*, 14-1236; *CBS Corp. v.*

*FCC*, 14-1237.  Before this Court issued any orders in those proceedings, the

parties stipulated to a dismissal of the proceedings on November 12, 2014.

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Intervenors respectfully submit the following corporate disclosure statements:

**AT&T Inc.** AT&T Inc. is a publicly traded corporation that, through its wholly owned subsidiaries and affiliates, is principally engaged in the business of providing communications services and products to the general public. It has no parent company, and no publicly held corporation owns 10 percent or more of its stock.

**Charter Communications, Inc.** Charter Communications, Inc. is a publicly traded company. Liberty Media Corporation owns more than 10 percent of Charter's stock.

**Comcast Corporation.** Comcast Corporation is a publicly traded Pennsylvania corporation. Comcast Corporation is not a subsidiary of any other corporation. No publicly held corporation owns 10 percent or more of the stock of Comcast.

**Time Warner Cable Inc.** Time Warner Cable Inc. is a publicly traded corporation. No publicly traded corporation owns 10 percent or more of Time Warner Cable's stock.

**DIRECTV.** DIRECTV is a publicly traded corporation that, through its wholly owned subsidiaries and affiliates, is principally engaged in the business of providing digital television entertainment services and products to the general public. It has no parent company, and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

CORPORATE DISCLOSURE STATEMENTS ..................................... iii

TABLE OF CONTENTS ................................................................. v

TABLE OF AUTHORITIES ......................................................... vii

GLOSSARY .............................................................................. x

STATUTES AND REGULATIONS .................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

ARGUMENT ............................................................................ 4

I.      The FCC Adopted Reasonable Procedures To Govern A
        Participant's Access To VPCI After Bureau Denial Of Any
        Objections ................................................................... 4

        A.      The FCC needs room to design discovery procedures that
                aid its timely review of proposed transactions ............... 4

        B.      The FCC responded reasonably to Petitioners' wholesale,
                unsupported objections to any access to VPCI by any
                individual .......................................................... 6

II.     The FCC Reasonably Rejected Petitioners' Alternatives To The
        Protective Orders ......................................................... 15

        A.      The FCC reasonably trusted protective orders to maintain
                the confidentiality of sensitive information such as VPCI ... 16

        B.      Petitioners have not shown why the FCC needed to adopt
                other protections here ............................................ 18

CONCLUSION ........................................................................ 20

RULE ECF-3(B) ATTESTATION

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page

## CASES

*Braniff Master Exec. Council v. CAB*, 693 F.2d 220 (D.C. Cir. 1982) ....................5

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ..............16

*\*FCC v. Schreiber*, 381 U.S. 279 (1965) ...................................................................4

*FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C. Cir. 1980) ..............16

*Global Crossing Telecommunications, Inc. v. FCC*, 259 F.3d 740
   (D.C. Cir. 2001) ............................................................................................4

*MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994) ....................16

*\*United States v. California Rural Legal Assistance, Inc.*, 722 F.3d 424
   (D.C. Cir. 2013)...................................................................................16, 19

*Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519 (1978) ................20

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
   559 F.2d 841 (D.C. Cir. 1977)..............................................................11, 14

## ADMINISTRATIVE MATERIALS

Memorandum Opinion and Order, *Charter Communications
   Entertainment I, LLC*, 22 FCC Rcd 13890 (MB 2007).................................14

Order, *Applications of Comcast Corp., General Electric Co. & NBC
   Universal, Inc. for Consent to Assign Licenses or Transfer
   Control of Licenses*, 25 FCC Rcd 3101 (MB 2010).......................................6

Authorities principally relied upon are designated by an asterisk (*).

Order, *Applications of Cumulus Licensing, Corp. and Clear Channel Broadcasting Licenses, Inc.*, 16 FCC Rcd 1052 (2001) .................................14

Order, *Implementation of Section 224 of the Act*, 26 FCC Rcd 7792 (WCB 2011)........................................................................................14

Order, *Liberty Productions*, 16 FCC Rcd 18966 (2001) .........................................11

Order, *Lockheed Martin Global Telecommunications, et al.*, 17 FCC Rcd 1552 (IB 2002) .........................................................................5

Order Concerning Second Protective Order, *News Corp., General Motors Corp., and Hughes Electronics Corp.*, MB Dkt. No. 03-124 (rel. Jul. 22, 2003) ....................................................................17

Protective Order, *Application of News Corp., DIRECTV Group, Inc., and Liberty Media Corp. for Authority to Transfer Control*, MB Dkt. No. 07-18 (rel. Jul. 10, 2007) .................................................17

Report and Order, *Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission*, 13 FCC Rcd 24816 (1998)...........................................11, 12, 19

Report and Order and Further Notice of Proposed Rulemaking, *Rates for Interstate Inmate Calling Services*, 28 FCC Rcd 14107 (2013)........................................................................................12

Second Protective Order, *Applications of Adelphia Communications Corporation, Time Warner Cable Inc., and Comcast Corporation for Consent to the Assignment and/or Transfer of Control of Licenses*, 20 FCC Rcd 20073 (MB 2005)....................................17

## STATUTES AND RULES

*47 U.S.C. § 154(j)..............................................................................................4

Fed. R. Civ. P. 26(c)(1)(G) ..................................................................................16

D.C. Cir. R. 27(f) .................................................................................................15

D.C. Cir. R. 36(d) ....................................................................................13

## OTHER MATERIALS

Federal Communications Commission, Strategic Plan 2014-2018
(2014), *available at* http://www.fcc.gov/document/fcc-
strategic-plan-2014-2018 ................................................................6

Letter from John L. Flynn, Counsel for Charter Communications, Inc.,
to Marlene H. Dortch, Secretary, FCC (Oct. 15, 2014),
*available at*
http://apps.fcc.gov/ecfs/document/view?id=60000973604 ............8

Letter from Peter J. Schildkraut, Counsel for AT&T, to Marlene H.
Dortch, Secretary, FCC (Oct. 8, 2014), *available at*
http://apps.fcc.gov/ecfs/document/view?id=60000971939 ............8

Letter from William M. Wiltshire, Counsel for DIRECTV, to Marlene
H. Dortch, Secretary, FCC (Oct. 10, 2014), *available at*
http://apps.fcc.gov/ecfs/document/view?id=60000972513 ............8

Objection of Broadcast Objectors, MB Dkt. No. 14-57 (Oct. 14,
2014), *available at*
http://apps.fcc.gov/ecfs/document/view?id=60000973369 ............8

Objection of Broadcast Objectors, MB Dkt. No. 14-90 (Oct. 14,
2014), *available at*
http://apps.fcc.gov/ecfs/document/view?id=60000973396 ............8

Remarks of FCC Commissioner Michael O'Rielly, Chamber of
Commerce Telecom and E-Commerce Meeting, 2014 WL
6471900 (Nov. 17, 2014) ................................................................5

Statement of William Kennard, Chairman, FCC, Before the House
Committee on Commerce Subcommittee on
Telecommunications, Trade and Consumer Protection on the
Telecommunications Merger Review Act of 2000 (Mar. 14,
2000), *available at* http://transition.fcc.gov/Speeches/Kennard/
Statements/2000/stwek021.html ....................................................6

# GLOSSARY

| | |
|---|---|
| August 22 Order | Order, *Applications of Comcast Corp., Time Warner Cable Inc., Charter Communications, Inc., & SpinCo for Consent to Assign or Transfer Control of Licenses and Authorizations*, 29 FCC Rcd 10099 (MB rel. Aug. 22, 2014) |
| August 28 Order | Order, *Applications of AT&T Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, 29 FCC Rcd 10318 (MB rel. Aug. 28, 2014) |
| Bureau or Media Bureau | Media Bureau of the Federal Communications Commission |
| Clock Restart Notice | Public Notice, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, DA 14-1739 (MB rel. Dec. 3, 2014) |
| Clock Stop Order | Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, DA 14-1523 (MB rel. Oct. 22, 2014) |
| December 3 Order on Objections | Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. |

| | |
|---|---|
| | 14-57 & 14-90, DA 14-1740 (MB rel. Dec. 3, 2014) |
| FCC or Commission | Federal Communications Commission |
| Modified Protective Orders | Modified Joint Protective Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. No. 14-57, DA 14-1464 (MB Rel. Oct. 7, 2014), and Modified Joint Protective Order, *Applications of AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. No. 14-90, DA 14-1465 (MB Rel. Oct. 7, 2014) |
| November 4 Order on Objections | Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, DA 14-1605 (MB rel. Nov. 4, 2014) |
| November 10 Commission Order | Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, FCC 14-202 (FCC rel. Nov. 10, 2014) |
| November 10 Order on Objection | Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. |

14-57 & 14-90, DA 14-1631 (MB rel. Nov. 10, 2014)

October 7 Order Adopting
Modified Protective Orders

Order, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, DA 14-1463 (MB rel. Oct. 7, 2014)

Order

Order on Reconsideration, *Applications of Comcast Corp. and Time Warner Cable Inc. for Consent to Assign or Transfer Control of Licenses and Authorizations and AT&T, Inc. and DIRECTV for Consent to Assign or Transfer Control of Licenses and Authorizations*, MB Dkt. Nos. 14-57 & 14-90, DA 14-1601 (MB rel. Nov. 4, 2014)

VPCI

Video Programming Confidential Information

## STATUTES AND REGULATIONS

Pertinent statutes and regulations appear in the addenda to the Brief for the Petitioners and the Brief for Intervenor National Association of Broadcasters.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The FCC is reviewing two significant transactions:  AT&T's proposed acquisition of DIRECTV, and Comcast's proposed acquisition of Time Warner Cable and related divestiture transactions with Charter.  The success of these transactions, and their ability to bring benefits to the public, depend in large part on the FCC's expeditious review and resolution of the transaction applications.  The FCC has recognized its duty to "review proposed transactions as expeditiously as possible."  *E.g.*, August 28 Order ¶ 6.  The expedited schedule the Court set for this case reflects the same need for urgency.

In the order on review, the FCC affirmed and modified a series of orders issued by its Media Bureau that, in the FCC's "considered judgment," would aid its "expeditious resolution" of these proceedings.  November 10 Commission Order ¶ 3 (JA2).  The order concerns what proprietary documents to include in the record and how to protect them.  The FCC found that the merger applicants' programming agreements and related negotiation materials – referred to as Video Programming Confidential Information, or VPCI – are "central to a meaningful assessment of the issues" and should be incorporated into the record.  Order ¶ 10 (JA33); November

10 Commission Order ¶ 1 (JA1) (adopting Order's reasoning). Having made that judgment, the FCC approved (with one modification) the Bureau's procedures providing access to those materials subject to two stringent, substantively identical protective orders, one for each transaction. November 10 Commission Order ¶¶ 1-2 (JA1-2).

The FCC's brief defends its determination of what documents are relevant to its merger proceedings, and its right to make that determination. We write separately to stress two other points.

*First*, the FCC reasonably adopted the Bureau's timetable permitting an individual to access VPCI five business days after Bureau denial of any objections. The Bureau took this step in response to Petitioners' extraordinary decision to object to *every* request for access filed in these dockets – in nearly every instance, without offering any reason why the individual seeking access was ineligible to obtain it under the protective orders. Under the Bureau's approach, Petitioners cannot employ blanket objections to hold up the proceedings. To prevent access after Bureau denial of their objections, they must satisfy the standard criteria for obtaining a stay pending appeal.

*Second*, the FCC reasonably rejected Petitioners' alternatives to the protective orders. The FCC regularly relies on such orders to maintain the confidentiality of competitively sensitive information. Petitioners offer no reason

2

to second-guess the FCC's judgment to use similar protective orders here, including for other extremely sensitive information already produced by the merger applicants.  Nor have Petitioners shown that their alternatives are workable, as the Bureau explained in language the FCC adopted as its own.

Petitioners' wholesale objections to any access by any person have already undermined the FCC's goal of moving the merger reviews forward expeditiously. Those objections prompted a nearly two-month suspension of the FCC's 180-day merger review clocks and the pleading cycles for comments from interested parties.  Clock Stop Order ¶ 4 (JA3541); Clock Restart Notice at 3 (JA3676).  The Bureau has warned that the outcome in this case could require "*further* adjustment to the pleading requirements or transaction review clocks . . . to provide adequate time" for third-party review and comment on VPCI.  Clock Restart Notice at 3 (JA3676) (emphasis added).

The Court has recognized the need to resolve this matter swiftly to prevent further delay of the merger reviews.  Consistent with such expedition, we respectfully ask the Court to rule on the petition as quickly as it reasonably can.

# ARGUMENT

## I.  The FCC Adopted Reasonable Procedures To Govern A Participant's Access To VPCI After Bureau Denial Of Any Objections

### A.  The FCC needs room to design discovery procedures that aid its timely review of proposed transactions

The FCC "enjoys wide discretion in fashioning its own procedures." *Global Crossing Telecommunications, Inc. v. FCC*, 259 F.3d 740, 748 (D.C. Cir. 2001) (internal quotations omitted).  Congress has empowered the Commission to "conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice."  47 U.S.C. § 154(j).  This statutory grant provides "broad discretion to prescribe rules for specific investigations and to make ad hoc procedural rulings in specific instances."  *FCC v. Schreiber*, 381 U.S. 279, 289 (1965) (internal quotations and citations omitted).

Discretion to adopt appropriate procedures that facilitate agency action is critical here because the need for speed is pronounced.  The proposed transactions will provide "increased competition, lower prices, improved services, and expanded broadband deployment."[1]  Protracted merger review postpones the time when consumers and businesses will realize these benefits.

---

[1] Letter from Maureen R. Jeffreys, Counsel for AT&T, and William M. Wiltshire, Counsel for DIRECTV, to Marlene H. Dortch, Secretary, FCC, at 5 (Oct. 27, 2014) (JA3600) ("October 27 Letter") (describing benefits of AT&T-DIRECTV merger); *see also* Description of Transaction, Public Interest Showing,

4

Delays in these reviews also raise costs and increase risks both for the

applicants and for third parties. *See* Order, *Lockheed Martin Global*

*Telecommunications, et al.*, 17 FCC Rcd 1552, ¶ 13 (IB 2002) (finding applicants

would suffer "significant additional costs" if a stay were granted). During review,

employees, suppliers, contractors, and the parties themselves are left unsure what

services the new companies will market, what changes will be made, what

synergies will be realized, and what duplication will be eliminated. Parties may be

unable "to make future business plans and raise needed capital." Remarks of FCC

Commissioner Michael O'Rielly, Chamber of Commerce Telecom and E-

Commerce Meeting, 2014 WL 6471900, at *2 (Nov. 17, 2014). And "market

certainty" and the "flow of investment to the communications sector" are

hampered. *Id.*; *see Braniff Master Exec. Council v. CAB*, 693 F.2d 220, 231 (D.C.

Cir. 1982) (agency's expeditious merger review "facilitat[es] stability in the

financial markets by lessening the period of uncertainty faced by the parties").

---

and Related Demonstrations, MB Dkt. No. 14-90, at 4-9, 28-84 (June 11, 2014)
(JA1050-55, JA1074-1130) (same); Applications and Public Interest Statement:
Description of Transaction, Public Interest Showing, and Related Demonstrations,
MB Dkt. No. 14-57, at 2-4, 20-124 (Apr. 8, 2014) (JA286-88, JA304-408)
(describing benefits of Comcast-Time Warner Cable-Charter transactions).

The FCC has accordingly recognized its obligation to "review proposed transactions as expeditiously as possible."[2]  In 2000, in response to criticisms of prolonged transaction review proceedings, the Commission committed to try to reach a "decision on applications associated with even the most complex mergers within 180 days following public notice."[3]  More recently, the FCC has made "expeditious and thorough review of proposed transactions" a key "strategic objective," and has promised to work toward "faster and more consistent review and analysis of applications."[4]  The Commission's discretion to tailor its procedures is vital to this mission.

## B.  The FCC responded reasonably to Petitioners' wholesale, unsupported objections to any access to VPCI by any individual

In these proceedings, the FCC adopted reasonable procedures for an extraordinary situation – Petitioners' unprecedented use of a mechanism in the initial protective orders to hold up the merger reviews.

---

[2] August 28 Order ¶ 6; August 22 Order ¶ 7; Order, *Applications of Comcast Corp., General Electric Co. & NBC Universal, Inc. for Consent to Assign Licenses or Transfer Control of Licenses*, 25 FCC Rcd 3101, ¶ 5 (MB 2010).

[3] Statement of William Kennard, Chairman, FCC, Before the House Committee on Commerce Subcommittee on Telecommunications, Trade and Consumer Protection on the Telecommunications Merger Review Act of 2000 (Mar. 14, 2000), *available at* http://transition.fcc.gov/Speeches/Kennard/Statements/2000/stwek021.html.

[4] Federal Communications Commission, Strategic Plan 2014-2018, at 13 (2014), *available at* http://www.fcc.gov/document/fcc-strategic-plan-2014-2018.

1.     The Bureau's protective orders, as strengthened in response to Petitioners' concerns, restricted access to VPCI to a narrow class of individuals associated with interested parties – outside counsel or consultants not involved in "competitive decision-making."  Modified Protective Orders ¶¶ 2, 7 (JA133, JA135-36, JA144, JA146-47).  The orders created a procedure for objecting that particular requesters were ineligible for access.  November 4 Order on Objections ¶ 2 (JA69-70); *see* Modified Protective Orders ¶ 8 (JA136, JA147).  But the procedure was not intended to permit parties "to collaterally attack the propriety of" the underlying Bureau orders.  November 4 Order on Objections ¶ 9 (JA72).

After the Bureau issued these modified protective orders, individuals representing parties with interests in these proceedings, including the merger applicants, submitted acknowledgments of confidentiality seeking access to highly

confidential information.[5]  Some broadcasters responded by filing objections

asserting that four specific individuals were ineligible for access.[6]

Petitioners likewise could have properly objected to specific individuals

whom they believed were ineligible to review VPCI under the protective orders.

Instead, Petitioners objected to *every single person* who had filed

acknowledgments of confidentiality with the FCC, and continued objecting to

every request for access subsequently filed in these proceedings.[7]  Altogether,

Petitioners objected to 266 individuals in the two dockets.  November 4 Order on

Objections ¶ 4 (JA70).

---

[5] *See*, *e.g.*, Letter from Peter J. Schildkraut, Counsel for AT&T, to Marlene H. Dortch, Secretary, FCC (Oct. 8, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=60000971939; Letter from William M. Wiltshire, Counsel for DIRECTV, to Marlene H. Dortch, Secretary, FCC (Oct. 10, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=60000972513; Letter from John L. Flynn, Counsel for Charter Communications, Inc., to Marlene H. Dortch, Secretary, FCC (Oct. 15, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=60000973604.

[6] *See* Objection of Broadcast Objectors, MB Dkt. No. 14-90 (Oct. 14, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=60000973396; Objection of Broadcast Objectors, MB Dkt. No. 14-57 (Oct. 14, 2014), *available at* http://apps.fcc.gov/ecfs/document/view?id=60000973369.

[7] *See* Objection of Content Cos., MB Dkt. No. 14-90 (Oct. 15, 2014) (JA3259-65); Objection of Content Cos., MB Dkt. No. 14-57 (Oct. 16, 2014) (JA3266-79); Objection of Content Cos., MB Dkt. No. 14-90 (Oct. 16, 2014) (JA3280-86); Objection of Content Cos., MB Dkt. 14-90 (Oct. 20, 2014) (JA3475-81); Objection of Content Cos., MB Dkt. No. 14-90 (Oct. 21, 2014) (JA3487-91); Objection of Content Cos., MB Dkt. No. 14-90 (Oct. 23, 2014) (JA3544-54).

In most cases, Petitioners offered no legitimate basis under the protective orders for their objections.  For 234 individuals, Petitioners did not even try.  *Id.*[8] Petitioners instead objected to the Bureau's determination to make VPCI available to anyone – a collateral attack on the underlying orders.  As to 10 other individuals, Petitioners objected that these individuals were not "outside counsel" or "outside consultants" because they were direct employees of the participating party.  *Id.* at ¶ 10 (JA72).  But the protective orders expressly defined "outside counsel" and "outside consultant" to include attorneys and consultants employed by "a non-commercial [p]articipant" in the proceeding, as these 10 individuals concededly were.  Modified Protective Orders ¶ 2 (JA133, JA144).  For the remaining 22 individuals seeking access, Petitioners asserted specific objections – demonstrating that they knew how to do so when they believed they could.

Petitioners' objections halted the merger reviews.  The modified protective orders withheld access to covered material "[u]ntil any objection is resolved by the Commission and, if appropriate, by any court of competent jurisdiction."  *Id.* ¶ 8 (JA136, JA147).  Petitioners' blanket objections, which the full Commission and

---

[8] Although the November 4 order stated that Petitioners had failed to provide any basis as to 235 individuals, November 4 Order on Objections ¶ 4 (JA70), the Bureau subsequently modified its order to "take no action with respect to" one individual, as to whom Petitioners had asserted a specific basis for their objection. November 10 Order on Objection ¶¶ 1-2 (MB rel. Nov. 10, 2014), *available at* https://apps.fcc.gov/edocs_public/attachmatch/DA-14-1631A1.pdf.

9

court had not yet resolved, had the effect of cutting off all access to VPCI indefinitely.  In response, the Bureau stopped the FCC's 180-day clocks for these merger reviews and suspended associated pleading cycles.  Clock Stop Order ¶ 4 (JA3541).  "[A]s a result of [those] objections," the FCC did not restart the clock until early December, causing six weeks of delay.  Clock Restart Notice at 1, 3 (JA3674, JA3676).

    **2.**    On November 4, as modified on November 10, the Bureau denied Petitioners' baseless objections (concerning 244 individuals), and concluded that it would address Petitioners' specific objections (as to the remaining 22 individuals) in future orders.  November 4 Order on Objections ¶ 3 & n.8 (JA70); November 10 Order on Objection  ¶¶ 1-2.  The Bureau also acted to limit Petitioners' ability to further hold up these merger proceedings.

    The Bureau was reasonably concerned that Petitioners could "suspend indefinitely another party's (or *every other party's*) effective participation in the proceeding simply by filing an objection."  Order ¶ 36 (JA45) (emphasis added).  The Bureau thus amended its protective orders to permit an individual to gain access to covered material five business days after Bureau denial of objections.  *Id.*  Petitioners would remain free to seek from the FCC a stay of that denial pending an application for Commission review, but the burden would be on Petitioners to show that they met the standard criteria for such a stay – which would include

having a bona fide objection that the specific individual seeking access is ineligible to get it.[9]  Consistent with the expedited nature of merger reviews, however, the mere filing of such a stay request (or even a series of such requests) would not threaten to delay access or to slow the proceeding.  The FCC duly affirmed this decision "for the reasons stated" in the Bureau's thorough, 19-page order.  November 10 Commission Order ¶ 1 (JA1).

    **3.**    Petitioners (at 22-34) call the FCC's actions an unexplained departure from prior policy that deprives them of "meaningful pre-disclosure review."  That assertion is wrong.

    *First*, the FCC's response to Petitioners' wholesale objections was no "departure" from FCC policy (Petitioners' Br. at 22).  The unbending policy Petitioners imagine does not exist.  The 1998 FCC order on which Petitioners rely said nothing about when a Bureau may permit access to information designated as confidential under a protective order.  Report and Order, *Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission*, 13 FCC Rcd 24816, ¶ 1 (1998) ("1998 Order").  The order instead addressed situations where a request to *designate* information as confidential is

---

    [9] *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see also* Order, *Liberty Productions*, 16 FCC Rcd 18966, ¶ 12 & n.10 (2001) (applying *Holiday Tours* in deciding whether to grant stay of FCC decision pending judicial review).

pending, or where information designated as confidential is "the subject of a FOIA request" for *public* disclosure.  *Id.* ¶¶ 23, 72.

Nor do the protective orders cited by Petitioners (at 25 & n.9) establish a hard-and-fast rule against "access to confidential information until any objection is resolved by the Commission and, if appropriate, by any court."  *Id.* at 25 (internal quotations omitted).  Notably, the 1998 order cited by Petitioners adopted a model protective order that does *not* include that language, despite Petitioners' apparent belief that all protective orders should.  *See* 1998 Order, Appendix C, Standard Protective Order and Declaration.

To be sure, in some proceedings the FCC has adopted a presumption against access pending rulings on objections by the full Commission and a court.  "But different records justify different rules."  Dissenting Statement of Ajit Pai, Report and Order, *Rates for Interstate Inmate Calling Services*, 28 FCC Rcd 14107, 14224 (2013).  A presumption against access takes for granted that parties will object to specific requests for access only when they have some basis for doing so.  Petitioners instead used objections to prevent disclosure of VPCI to *any* participant in these proceedings, effectively obtaining an automatic injunction against disclosure by the mere act of objecting.  Petitioners cannot fault the FCC for tailoring its discovery procedures to prevent such abuse – particularly given the

risk that other parties might engage in similar tactics if Petitioners' approach were left unchecked.

*Second*, the FCC's decision was not "unexplained" (Petitioners' Br. at 22). The Bureau explained the reasons for modifying the protective orders – balancing Petitioners' confidentiality interests with the need to permit "effective participation" by the parties and ensure "timely" completion of the proceedings, *see* Order ¶ 36 (JA45) – and the FCC affirmed them.  November 10 Commission Order ¶ 1 (JA1).

Petitioners claim (at 28-29) that the Bureau "logically" could not have addressed their arguments fully because Petitioners made them only after the Bureau had issued its decision.  But Petitioners had an ongoing dialogue with the Bureau over these issues, and the Bureau both anticipated and addressed their points in explaining its modifications.  And the Commission properly relied on the Bureau's analysis – just as this Court does when it affirms a district court decision for the reasons stated in that opinion, despite the district court's never having seen the appellate briefs.  *See* D.C. Cir. R. 36(d).

*Third*, the FCC's decision does not preclude "meaningful pre-disclosure review" of objections to requests for access to VPCI (Petitioners' Br. at 26). Although Petitioners' brief ignores this fact, the order they challenge did not permit disclosure of VPCI to individuals as to whom Petitioners had asserted

legitimate objections – only those as to whom Petitioners had asserted no real basis at all.[10]

In any event, Bureau denial of Petitioners' objection to an individual seeking access does not leave them without meaningful recourse.  They remain free to seek a stay from the full Commission (and, if necessary, a court), by satisfying the ordinary standard for obtaining a stay pending review.  *See Holiday Tours*, 559 F.2d at 843.

Petitioners complain (at 27 n.10) that the Commission might not be able to act quickly enough, but the FCC frequently acts on emergency stay requests.[11] There is no reason to assume that the FCC cannot do the same here.  And, if the Commission fails to act promptly, Petitioners can seek appropriate judicial relief. They have exercised that right in this very case:  three days after the FCC resolved Petitioners' application for review, Petitioners sought a stay from this Court.  *See*

---

[10] The Bureau has since issued an order disposing of some of those objections and deferring others pending this Court's review.  December 3 Order on Objections ¶ 1 (JA3677).

[11] *See*, *e.g.*, Order, *Implementation of Section 224 of the Act*, 26 FCC Rcd 7792 (WCB 2011) (resolving stay request six days after filing); Memorandum Opinion and Order, *Charter Communications Entertainment I, LLC*, 22 FCC Rcd 13890 (MB 2007) (granting emergency stay request); Order, *Applications of Cumulus Licensing, Corp. and Clear Channel Broadcasting Licenses, Inc.*, 16 FCC Rcd 1052 (2001) (resolving emergency petition for stay of Bureau order).

Emergency Motion for Stay Pending Judicial Review, No. 14-1242 (filed Nov. 13, 2014).[12]

Finally, the FCC's adoption of this procedure will hardly place the Commission and the courts "in a perpetual state of emergency" (Petitioners' Br. at 33). Petitioners' abusive tactics in these proceedings obliged the Commission to take decisive action. But Petitioners offer no reason to believe that the Commission will need to employ similar procedures in the future if Petitioners' maneuvers are repudiated here.

## II.     The FCC Reasonably Rejected Petitioners' Alternatives To The Protective Orders

The FCC concluded that the protective orders in place – not Petitioners' proposed alternatives – "provide the proper balance" between Petitioners' interest in their VPCI and the public interest in meaningful participation in the merger proceeding. Order ¶ 23 (JA40); *see* November 10 Commission Order ¶ 1 (JA1). That judgment was well within the FCC's discretion to "establish the procedures for safeguarding confidentiality," and it should be upheld. *United States v.*

---

[12] Petitioners are mistaken (at 27 n.10) that the "unreasonableness of the Bureau's five-day window" is apparent by comparison to this Court's rule generally requiring parties "to seek emergency relief at least seven days before judicial intervention is required." *See* D.C. Cir. R. 27(f). The Commission provided a window of "five business days," which will equal or exceed the seven calendar days this Court's rule contemplates.

*California Rural Legal Assistance, Inc.*, 722 F.3d 424, 429 (D.C. Cir. 2013) (internal quotations omitted); *see also FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 974-75 (D.C. Cir. 1980) (deferring to agency judgment that notice provision was "sufficient to safeguard the appellants' interests" in confidentiality).

## A.  The FCC reasonably trusted protective orders to maintain the confidentiality of sensitive information such as VPCI

Although Petitioners suggest otherwise (at 39), protective orders are "a time-tested means to protect highly sensitive information." Order ¶ 22 (JA39). Courts regularly use them for even the most competitively sensitive information.[13] The FCC does, too – including to protect the thousands of sensitive documents, covering topics such as "strategic planning, current and future plans to compete for customers, pricing, marketing, [and] merger and acquisition valuation," that are routinely submitted in the agency's review proceedings. October 27 Letter at 2 (JA3597). Among those documents are programming materials – including "affiliation agreements, retransmission consent agreements[,] and related documents" – referred to here as VPCI. Order ¶ 19 (JA37). The FCC has ordered

---

[13] *See*, *e.g.*, Fed. R. Civ. P. 26(c)(1)(G) (protective orders can be used for "trade secret or other confidential research, development, or commercial information"); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992) (upholding protective order allowing "independent consultant" to access "competitor's trade secrets"); *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 120 (4th Cir. 1994) ("[T]rade secrets have widely been held to be discoverable . . . with an appropriate protective order[.]").

production of such material in several prior merger reviews – and under protective orders less exacting than the stringent orders in effect here.[14]

The FCC has good reason to depend on protective orders to maintain confidentiality:  the merger applicants, who have themselves shared highly confidential information with the FCC pursuant to protective orders in numerous prior merger reviews, are unaware of even a single instance of a third party misusing it.  Even Petitioners, for all their dire predictions, cite (at 46-47) only a single instance of inadvertent disclosure of highly confidential information in any prior review proceeding – the disclosure by AT&T of a single AT&T cost figure that *AT&T* had marked highly confidential, and in which no other party had a confidentiality interest.

Although VPCI is no more commercially sensitive than other highly confidential information produced by the merger applicants, the protective orders

---

[14] *See* Second Protective Order, *Applications of Adelphia Communications Corporation, Time Warner Cable Inc., and Comcast Corporation for Consent to the Assignment and/or Transfer of Control of Licenses*, 20 FCC Rcd 20073 (MB 2005) (proceeding on Comcast and Time Warner's proposed acquisition of cable systems from Adelphia); Protective Order, *Application of News Corp., DIRECTV Group, Inc., and Liberty Media Corp. for Authority to Transfer Control*, MB Dkt. No. 07-18 (rel. Jul. 10, 2007) (proceeding on Liberty Media's application to acquire an interest in DIRECTV from News Corporation); Order Concerning Second Protective Order, *News Corp., General Motors Corp., and Hughes Electronics Corp.*, MB Dkt. No. 03-124 (rel. Jul. 22, 2003) (proceeding on News Corporation's application to acquire interest in DIRECTV).

in effect here impose even "greater protections" for it.  Order ¶ 10 (JA33).  They

make VPCI available only to outside counsel and consultants for the parties; bar

access by anyone engaged in "competitive decision-making" involving video

programming; require anyone seeking access to acknowledge in writing their

obligations; and afford interest holders, such as Petitioners, advance notice and an

opportunity to object before allowing any access.  *See* October 7 Order Adopting

Modified Protective Orders ¶¶ 4-10 (JA126-30).  Even those few individuals who

gain access to VPCI can review it only at secure locations established by the

submitting party; cannot print, copy, or transmit it; and may use it only for these

proceedings.  *Id.* ¶¶ 6, 11 (JA127, JA130); November 10 Commission Order ¶ 2

(JA1-2).  The FCC reasonably concluded that these "exacting" procedures

adequately protect VPCI.  Order ¶ 10 (JA33).

### B.   Petitioners have not shown why the FCC needed to adopt other protections here

Despite the extraordinary protections accorded VPCI, Petitioners fault (at

51) the FCC for failing to adopt two additional measures that, they contend,

"provide greater protection for their confidentiality interests."  But the FCC had no

obligation to choose the most protective route available regardless of the

downsides of such an approach; it is not subject to some strict-scrutiny-like narrow

tailoring requirement.  Instead, Petitioners must show that "the agency abused its

18

discretion by not requiring the additional protections." *California Rural Legal Assistance*, 722 F.3d at 429-30.

The FCC reasonably explained its rejection of Petitioners' first proposal – release of only redacted, anonymized VPCI to third parties – as "unrealistic and inappropriate." Order ¶ 34 (JA44). The Commission reasoned that redacting and anonymizing the VPCI would take far too long, and, even if feasible, would "undermine the utility of making such documents available for limited review in the first place." *Id.* ¶ 34 (JA44-45). Petitioners do not deny (at 52) the "burden" of redacting and anonymizing this volume of information. And Petitioners dispute the FCC's second rationale only by ignoring substantial FCC precedent where VPCI was protected to a *lesser* extent than the FCC protected it here. *See supra* at 17-18.

The FCC likewise reasonably rejected Petitioners' request to further limit the already-narrow class of individuals who may access VPCI. At present, only a small set of individuals – none of whom is involved in competitive decision-making, and most of whom are associated with the merger applicants themselves – may access VPCI.[15] Petitioners argue (at 55) that access should be further

---

[15] Petitioners unfairly diminish the extent of this protection. In the 1998 order they cite, the FCC noted that only "in rare instances" would it consider limiting access to confidential information to "outside counsel and experts," 1998 Order ¶ 26, as the agency has done here.

confined to requesters who can make a "particularized, good-faith showing that they need[] access to VPCI" to support a "specific argument or proposal." But Petitioners do not (and cannot) claim that the FCC has ever required such a particularized showing for non-competitive decision-makers – and it had no obligation to impose such a novel stricture here. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524 (1978) ("reviewing courts are generally not free to impose" procedures the agency has "not chosen to grant"). As the Bureau explained in rejecting the proposal, these proceedings depend on "informed participation by the public," not just "specific individuals" with "an interest to protect." Order ¶ 17 n.64 (JA36). Petitioners may disagree with that judgment, but they give no reason to overturn it.

## CONCLUSION

The Court should affirm the November 10 Commission Order.

Dated:  January 2, 2015

William M. Wiltshire
Timothy J. Simeone
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, NW, 8th Floor
Washington, D.C. 20036-3537
(202) 730-1350

Larry D. Hunter
DIRECTV, LLC
2260 East Imperial Highway
El Segundo, CA 90245
(310) 964-5000

*Counsel for DIRECTV*

Samuel L. Feder
John Flynn
JENNER & BLOCK
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 639-6000

*Counsel for Charter Communications,
Inc.*

Respectfully submitted,

 /s/ *Michael K. Kellogg*
Michael K. Kellogg
Scott H. Angstreich
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

D. Wayne Watts
David R. McAtee II
AT&T INC.
208 South Akard Street, Room 3303
Dallas, TX 75202
(214) 757-3319

Lori Fink
Gary Phillips
AT&T INC.
1120 20th Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 457-3055

*Counsel for AT&T Inc.*

David P. Murray
Francis M. Buono
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000

*Counsel for Comcast Corporation*

Matthew A. Brill
Matthew T. Murchison
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 20004
(202) 637-2200

*Counsel for Time Warner Cable Inc.*

## RULE ECF-3(B) ATTESTATION

In accordance with D.C. Circuit Rule ECF-3(B), I hereby attest that all other parties on whose behalf this brief is submitted concur in the brief's content.


 /s/ *Michael K. Kellogg*
Michael K. Kellogg


January 2, 2015

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a), as modified by the Court's December 4, 2014 briefing order granting Intervenors AT&T Inc., Charter Communications, Inc., Comcast Corporation, Time Warner Cable Inc., and DIRECTV 4,375 words, the undersigned certifies that this brief complies with the applicable type-volume limitations.  This brief was prepared using a proportionally spaced type (Times New Roman, 14 point).  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), this brief contains 4,374 words.  This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 2007) used to prepare this brief.


                                         /s/ *Michael K. Kellogg*
                                         Michael K. Kellogg

January 2, 2015

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2015, I electronically filed the Brief for Intervenors AT&T Inc., Charter Communications, Inc., Comcast Corporation, Time Warner Cable Inc., and DIRECTV with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ *Michael K. Kellogg*
Michael K. Kellogg